In the Matter of the Application of FLORENCE V. RYAN, Petitioner, for Herself and on Behalf of All Other Persons Who, Except for Their Age, Are Qualified to Participate in the Civil Service Examination to Be Given for the Position of Clerk, Grade 2, as Heretofore Announced, for an Order of Mandamus against JAMES E. FINEGAN and Others, as the Municipal Civil Service Commission of the City of New York, and WILLIAM H. ALLEN, as Secretary of Such Commission, Defendants.*

Supreme Court, Special Term, New York County, July 8, 1937.

*King & Ryan,* for the petitioner.

*Paul Windels, Corporation Counsel [Jeremiah M. Evarts* of counsel], for the defendants.

---

* Affd., 253 App. Div. 713; leave to appeal to Court of Appeals denied, Id. 797; leave to appeal to Court of Appeals denied, *sub nom. Matter of Ryan* v. *Kern* (277 N. Y. 739).

VALENTE, J. The municipal civil service commission has announced a competitive examination for the position of clerk, grade 2. The call for applications issued by that body provides that applicants must be high school graduates between the ages of eighteen and through twenty-five years. It will be observed from the announcement that certain employees of the emergency relief bureau who possess the preliminary requirements as to age and education will be eligible for appointment in any city department, while those employees of the department of public welfare or emergency relief bureau who pass the examination but are not in possession of the preliminary requirement as to age and education will be eligible for appointment only in the emergency relief bureau or the department of public welfare. It should be noted that the salary is $1,200 to, but not inclusive of, $1,800 annually.

The petitioner, who graduated from high school, filed a formal application to take the test which was rejected by the commission because it disclosed she was twenty-seven years of age, two years older than the maximum age fixed. In this application for mandamus she challenges the reasonableness of the age limitation and charges that it was promulgated to favor a particular group.

At the outset it must be noted that this preference granted to the emergency relief bureau employees, which confers an exemption as to age and education and which constitutes them a favored class, is not directly the result of any action of the municipal civil service commission but has its origin in an act of the Legislature (Laws of 1937, chap. 358). Section 6 of that chapter added two new sections to the Public Welfare Law. Section 3-k provides substantially that for examinations held thereafter and prior to July 1, 1938, any person employed for a period of not less than three months between July 1, 1936, and June 30, 1937, in an equivalent position in the public welfare department or emergency relief bureau established under chapter 798 of the Laws of 1931, Ex. Sess. (McKinney's Unconsol. Laws, § 2451 *et seq.*), on whose salary State reimbursement is made, shall be deemed eligible for admission to the examinations being held to establish lists from which the appointments are to be made to such welfare department, etc. Whether or not this statute is unconstitutional the court is not called upon to determine at this time, since that issue is squarely presented in another proceeding (*Matter of O'Callaghan* v. *Finegan*, 166 Misc. 556), where that question is predominant. It must, however, receive passing consideration, inasmuch as it is claimed that the fixing of the age limitation in the present case restricts the number of persons against whom employees of the emergency relief bureau would be required to compete, and the commission's action in fixing this age limitation is arbitrary in its nature,

since employees of the emergency relief bureau are not bound by the rule that was promulgated. Moreover, any argument to justify the establishment of an age limitation and educational requirement on the grounds that it is necessary for the good of the public service and is a proper exercise of administrative power, as pointed out by the commission, must necessarily lose its effectiveness when it is considered that a large group of applicants are regarded as desirable and will be permitted to take the examination and placed on the eligible list who are past the age of twenty-five years, and who are not high school graduates. In other words, is not the commission exceeding its power and acting in an unreasonable manner when it fixes the age at twenty-five for all except those who fortuitously happen to be employed in the emergency relief bureau for three months, and thus are the beneficiaries of legislative action ?

That the commission under the law (Civil Service Law, § 11, subd. 1) has the power to make rules concerning civil service examinations cannot be disputed, but logical reasoning (*People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570) must support the principle that the discretionary powers of the municipal civil service commission cannot be carried so far as to defeat the purposes of genuine competitive civil service. (*People ex rel. Fowler* v. *Moskowitz*, 175 App. Div. 710; affd., 220 N. Y. 669.)

Civil service would indeed become meaningless if the competitive character of civil service examinations were removed by unsound infringements by either legislative, judicial or executive power. Constitutional exemption in favor of disabled war veterans stands in a separate position. As Judge CARDOZO observed in *Matter of Barthelmess* v. *Cukor* (231 N. Y. 435, 445): " The test is *competitive* examination. Competition is useless if favor may reverse the verdict. Eligibility counts for little if grades of eligibility may be established without restriction."

A system of public appointment where by circumvention such as the capricious fixing of age limits, the filling of position by temporary appointment pending examination, and the granting of preferences and exemptions based on such service, cannot be termed real civil service, but is in the nature of a haphazard distribution where good fortune rather than merit play the major role.

It may well be that the mandate of the Legislature is specific and the commission considers itself bound by its provisions, but its contention here that the age limitation was adopted because of the simplicity of the duties involved cannot be reconciled with the fact that individuals of all ages who have been employed in the emergency relief bureau are eligible for appointment. Certainly no good reason suggests itself to me why those who have been employed in the

emergency relief bureau for three months, and who may be of any age, should be eligible to take the test while an age limitation of twenty-five should be imposed on others. The excuse offered by the commission that the position contemplates the performance of the simplest of clerical duties and is to serve as an induction into the career branches of the civil service at an early age does not recommend itself to me as sound argument when a favored group can enter the service at any age.

Its statement, likewise, that younger people are more adapted to perform service of this character is also deficient for the same reason. The idea of establishing a career service in the clerical branch of the city service is praiseworthy, but it is difficult to understand why one who has passed the age of twenty-five years should be deprived of the opportunity of entering upon such a career. It is well known that many worthy individuals enter their chosen fields of endeavor much later in human life. Certainly it is difficult to conceive why the commission placed a premium on adolescence, particularly when the annual salary ranges up to $1,800. Considering the living standards and economic conditions prevailing today, I cannot understand why persons over the age of twenty-five years and otherwise qualified should be deprived of earning a salary generally regarded as suited to the ability of a mature adult. The commission points out that it is desirable to bring into the city service young people who then can be promoted and advanced step by step to the higher clerical grades, by the method of promotion examinations. In principle as well as in theory the idea is excellent. On closer scrutiny, however, and when analyzed by the test of practicability, the formula has its absurd phases, for it must follow that, if the upper grades of the clerical service are to be filled by promotion examinations from the lowest grade, a person who is not fortunate enough to have made a decision early in lifetime, when he or she could qualify as to age to get into the lowest branch of the service, could be effectively barred from ever entering the city clerical service. This would inevitably mean the elimination of competition from the civil service.

Assuredly the fixing of age limitations is a difficult matter. It has always been a lively topic of sociological and psychological discussion. There is no hard and fast rule that can be applied. This much must be agreed on, that the standard that is adopted must be sufficiently flexible so as not to do violence to the spirit of civil service and our conception of it. It is quite needless to recount here, as the accuracy of the exhibits submitted by the petitioner are not questioned, that the State Civil Service Commission sets no maximum age, and the Federal government sets an age of fifty-three, and the present commission in 1935 set a maximum of forty-five, for

positions similar in character to the position of clerk, grade 2, for which the present examination has been scheduled. Among other authorities, the principal ones relied upon by the petitioner are the cases of *Matter of Laverty* v. *Finegan* (249 App. Div. 411) and *People ex rel. Moriarty* v. *Creelman* (206 N. Y. 570). Both of these cases, however, are definitely distinguishable. The *Moriarty* case is simply authority for the proposition that the commission was within its rights in formulating a minimum age requirement of twenty-five years for the position of inspector in the bureau of fire prevention, for it can be " fairly argued that a man of twenty-five years of age would be apt to have a more mature and reliable judgment than one of twenty-one years, and, therefore, would be better fitted for appointment to one of these very responsible positions." The situation here is not analogous. Clerk, grade 2, is not a responsible position, on the commission's own statement, and, if one eighteen years of age is regarded as sufficiently mature to fill it acceptably, certainly it can be expected that one twenty-seven years of age should be able to perform the service at least equally as well.

The facts in the *Laverty* case are not similar to those in the case at bar. There a requirement was promulgated that applicants for the position of chief lifeguard must not be less than twenty-one nor more than forty years of age. The petitioner had established an excellent record as a lifeguard and acting chief lifeguard, but was rejected by the commission for the reason that he exceeded the specified age limitation by five years. He then sought to set aside as arbitrary and capricious this requirement, and the Appellate Division held that the commission was within its rights in adopting the age limitation, inasmuch as a chief lifeguard should not only be capable of doing the work of ordinary lifeguard but that he should be able to teach his subordinates by demonstration the technique of life saving under difficult conditions. Further reference was made in that opinion to the fact that a chief lifeguard should be able to render at least fifteen years of useful service before retirement. The underlying reason, no doubt, for this decision is that a chief lifeguard, who is required to teach his subordinates by demonstration the technique of life saving under difficult conditions, must not only be in good health but should measure up to certain physical standards unimpaired by advancing years. The character of the work in both of the cases clearly suggested the advisability of promulgation of a particular rule respecting the age of applicants.

Inasmuch as no act of the Legislature exists prohibiting a citizen of the State from entering a competitive examination for appointment or promotion in the civil service by reason of age (*Matter of*

*Loud* v. *Ordway,* 219 N. Y. 451), it must follow that where an age limitation is prescribed by a commission, it must rest on reason and logic.

There is another aspect to the proceeding which I feel I cannot overlook. Reference to the announcement Exhibits A and B discloses under the heading of Subject and Weights that in rating applicants the written examination will count for seventy per cent and experience will be rated on a basis of thirty per cent. This suggestion conveys the idea that this may be a device to favor employees of the emergency relief bureau who are older and have had the opportunity to gain some clerical training. It is inconceivable that young persons eighteen or nineteen years of age, not in that bureau, and who must be high school graduates, could have acquired sufficient "experience" to enable them to procure high standing or even satisfactory credit in that branch of the examination.

Viewing the matter in all its various aspects, it appears to me that the arguments advanced by the commission to support its position are specious, and, when subjected to critical examination, fail to carry conviction. The court in a case of that character should not be hesitant to interfere with the administrative power, and it follows, therefore, that the petitioner's plea is granted and a peremptory order should issue. Settle order.